## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EGALET CORPORATION, et al., | ) Case No. 18-12439 (BLS) |
| | ) |
| | ) Jointly Administered |
| Debtors. [1] | ) |
| | ) **Ref. Docket No. 5** |

## FINAL ORDER (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, AND (C) MODIFYING THE AUTOMATIC STAY

Upon the motion (the "**Motion**")[2] of Egalet Corporation ("**Egalet**") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), seeking entry of this final order (the "**Final Order**") *inter alia*:

        (i)      authorizing the Debtors' continued use of Cash Collateral (as defined below);

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Egalet Corporation (5334), Egalet US Inc. (6649), and Egalet Limited (Foreign). The Debtors' corporate headquarters and mailing address is located at 600 Lee Road, Suite 100, Wayne, PA 19087.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(ii)    granting adequate protection to the Prepetition Secured Creditors for any Diminution in Value of their respective interests in the Prepetition Collateral (each as defined below), including the Cash Collateral;

(iii)    to the extent set forth herein, waiving the Debtors' right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code; and

(iv)    vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Creditors to implement and effectuate the terms and provisions of this Final Order.

The Court (as defined below) having considered the Motion, the First Day Declaration, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on November 1, 2018 (the "**Interim Hearing**") and the final hearing held on [December 3, 2018] (the "**Final Hearing**"); and the Court having entered the *Interim Order (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 53] (the "**Interim Order**"); and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Petition Date*:  On October 30, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing these Chapter 11

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

Cases.  On November 1, 2018, this Court entered an order approving the joint administration of these Chapter 11 Cases.

B.  *Debtors in Possession*.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.  *Jurisdiction and Venue*.  The Court has jurisdiction over this matter, these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  *Committee*.  As of the date hereof, the United States Trustee (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "**Committee**").

E.  *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as described in Paragraph 11 herein, the Debtors stipulate and agree that (collectively, Paragraphs E(i)-(iv) below are referred to herein as the "**Debtors' Stipulations**"):

3

(i)    *Secured Notes.*    Egalet issued 13% Senior Secured Notes (the "**Prepetition Secured Notes**," and the holders of the Prepetition Secured Notes, the "**Prepetition Secured Noteholders**") pursuant to that certain Indenture, dated as of August 31, 2016 (as amended, supplemented, or otherwise modified from time to time, the "**Secured Notes Indenture**," and together with the other Security Documents (as defined in the Secured Notes Indenture), the "**Prepetition Notes Documents**"), among Egalet, the Guarantors (as defined in the Secured Notes Indenture) from time to time party thereto, and U.S. Bank National Association, as trustee and collateral agent (the "**Prepetition Trustee**," and together with the Prepetition Secured Noteholders, the "**Prepetition Secured Creditors**"). As of the Petition Date, the Debtors were jointly and severally indebted to the Prepetition Secured Creditors pursuant to the Prepetition Notes Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $80,000,000, *plus* accrued and unpaid interest with respect thereto (which, as of the Petition Date, was $1,155,556), *plus* a premium with respect thereto at the optional redemption price on the terms set forth in the Secured Notes Indenture (which premium, as of the Petition Date, was $7,200,000.00), and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Secured Notes Indenture) owing under or in connection with the Prepetition Notes Documents (the "**Prepetition Secured Obligations**").

(ii)    *Notes Collateral.*    In connection with the Secured Notes Indenture, the Debtors entered into that certain Collateral Agreement, dated as of August 31, 2016 (as amended, supplemented or otherwise modified from time to time, the "**Collateral Agreement**"),

4

by and among Egalet, Egalet US Inc. and Egalet Limited, the Subsidiary Parties (as defined in the Collateral Agreement) from time to time party thereto, and the Prepetition Trustee. Pursuant to the Collateral Agreement and the other Prepetition Notes Documents, the Prepetition Secured Obligations are secured by valid, binding, perfected first-priority security interests in and liens on (the "**Prepetition Liens**") the Collateral (as defined in the Collateral Agreement) and the Notes Collateral (as defined in the Secured Notes Indenture) (collectively, the "**Prepetition Collateral**"), including substantially all of the Debtors' assets, including cash (the "**Cash Collateral**"), in each case subject to certain exceptions as set forth in the Secured Notes Indenture. All of the Debtors' cash as of the Petition Date constitutes Cash Collateral of the Prepetition Secured Creditors.

(iii)    *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Secured Obligations.* Each of the Debtors acknowledges and agrees that: (a) as of the Petition Date, the Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, the Prepetition Liens are senior in priority over any and all other liens on the Prepetition Collateral other than valid, enforceable, and non-avoidable Permitted Liens (as defined in the Secured Notes Indenture) on the Prepetition Collateral that were perfected prior to the Petition Date (or perfected thereafter to the extent permitted by section 546(c) of the Bankruptcy Code); (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment,

disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Prepetition Notes Documents, the Prepetition Secured Obligations, or the Prepetition Liens.

        (iv)    *Releases*. The Debtors hereby forever, unconditionally and irrevocably release, discharge, and acquit each of the Prepetition Secured Creditors, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, agents, and professionals, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the Prepetition Notes Documents and/or the transactions contemplated thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims

6

and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the extent, validity, priority, perfection, or avoidability of the Prepetition Liens and the Prepetition Secured Obligations. The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court entering the Final Order.

F. _Convertible Notes_. Egalet issued 5.50% Convertible Senior Notes due 2020 (the "**5.50% Convertible Notes**") pursuant to that certain Indenture, dated as of April 7, 2015 (as amended, supplemented, or otherwise modified from time to time, the "**5.50% Indenture**") among Egalet, the Guarantors (as defined in the 5.50% Indenture) from time to time party thereto, and The Bank of New York Mellon, as trustee (the "**Convertible Notes Trustee**," and together with the holders of Convertible Notes (as defined below), the "**Prepetition Convertible Notes Creditors**") and 6.50% Convertible Senior Notes due 2024 (the "**6.5% Convertible Notes**," and together with the 5.50% Convertible Notes, the "**Convertible Notes**") pursuant to that certain Indenture, dated as of December 27, 2017 (as amended, supplemented, or otherwise modified from time to time, the "**6.50% Indenture**," and together with the 5.50% Indenture, the "**Convertible Notes Documents**") among Egalet, the Guarantors (as defined in the 5.50% Indenture) from time to time party thereto, and the Convertible Notes Trustee, as trustee. As of the Petition Date, the Debtors were jointly and severally indebted to the Prepetition Convertible Notes Creditors pursuant to the Convertible Notes Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $48,538,000, _plus_ accrued and unpaid interest with respect thereto (which, as of the Petition Date, was $1,320,272.56), and any

additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Convertible Notes Documents) owing under or in connection with the Convertible Notes Documents; provided, however that this paragraph F shall not bind any parties other than the Debtors.

G.    *Adequate Protection.*  To protect their interests in the Prepetition Collateral, the Prepetition Secured Creditors are entitled to receive adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date resulting from, among other things, the use of Cash Collateral, the use, sale, lease, consumption, or disposition of Prepetition Collateral, or the imposition of the automatic stay (collectively, the "**Diminution in Value**") pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Pursuant to sections 361, 363, 503(b) and 507(b) of the Bankruptcy Code, as adequate protection the Prepetition Trustee, for the benefit of itself and the Prepetition Secured Noteholders, shall receive: (i) the Adequate Protection Liens (as defined below); (ii) the 507(b) Claim (as defined below), and (iii) the Adequate Protection Payments (as defined below).  The adequate protection provided herein and other benefits and privileges contained herein are necessary to protect the Prepetition Secured Creditors from any Diminution in Value of their interests in the Prepetition Collateral and obtain the consents and agreements contained herein, including that the adequate protection provided herein is subject and subordinate to the Carve Out (as defined below).  Based on the Motion and on the record presented to the Court, the terms of the adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) were negotiated in good faith, are fair and reasonable, reflect the Debtors' prudent exercise of business

8

judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral. The Prepetition Secured Creditors reserve the right to seek additional adequate protection beyond the adequate protection provided in the Interim Order or this Final Order.

H.    *Sections 506(c) and 552(b)*.    In light of the Prepetition Secured Creditors' agreement to subordinate their liens and superpriority claims to the Carve Out and to permit the continued use of their Cash Collateral as set forth herein, the Prepetition Secured Creditors are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.    *Consent by Prepetition Secured Creditors*.    The Prepetition Trustee (with the consent of the Prepetition Secured Noteholders) has agreed not to object to, conditioned on the entry of this Final Order, the Debtors' continued use of Cash Collateral, on the terms and conditions set forth in this Final Order, and the terms of the adequate protection provided for in this Final Order, including that the Adequate Protection Liens and 507(b) Claim are subject and subordinate only to the Carve Out.

J.    *Necessity of Relief Requested*.    The ability of the Debtors to finance their operations and complete a successful chapter 11 reorganization requires continued use of Cash Collateral. In the absence of the ongoing use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and immediate and irreparable harm to the Debtors, their estates, and their creditors would occur. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business or to maintain their property without the ongoing use of Cash Collateral. The relief requested in the Motion is therefore necessary for the continued operation of the Debtors'

businesses and the preservation of their property. The Prepetition Secured Noteholders and the Debtors have negotiated at arms'-length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' businesses during the Specified Period (as defined below). Entry of this Final Order is in the best interests of the Debtors and their estates.

K.    *Notice*. In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Bankruptcy Rules, notice of the Final Hearing has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties-in-interest, including: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) counsel to the Ad Hoc Secured Noteholder Committee; (f) counsel to the holders of the 5.50% Convertible Notes due 2020 and 6.50% Convertible Notes due 2024; (g) counsel to the Prepetition Trustee; and (h) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in the Prepetition Collateral. The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    Motion Granted. The Motion is granted on a final basis as set forth herein, and the use of Cash Collateral on a final basis is authorized, subject to the terms of the Final Order.

2.    <u>Objections Overruled</u>. All objections to the Motion to the extent not withdrawn or resolved are overruled. This Final Order shall become effective immediately upon its entry.

3.    <u>Authorization to Use Cash Collateral</u>.

(a)    <u>Specified Period</u>. Subject to the terms and conditions of this Final Order, the Debtors are authorized to continue to use Cash Collateral in accordance with the Budget (as defined below) for the period (the "**Specified Period**") from the Petition Date through the date which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined herein) and (ii) the date that is 6 months after the Petition Date.

(b)    <u>Use of Cash Collateral</u>. Subject to the provisions of this Final Order, including the Budget, Cash Collateral may continue to be used during the Specified Period by the Debtors to: (i) finance their working capital needs and for any other general corporate purposes; and (ii) pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of these Chapter 11 Cases (including the Adequate Protection Payments), in each case solely to the extent consistent with the Budget and this Final Order.

4.    <u>Adequate Protection</u>. The Prepetition Secured Creditors are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) to the extent of any Diminution in Value of their interests in the Prepetition Collateral (which shall be valued as of the Petition Date on a going-concern basis) (such adequate protection as set forth in clauses (a)-(g) below, the "**Adequate Protection Obligations**"). The Prepetition Trustee, on behalf of itself and for the benefit of the Prepetition Secured Noteholders, is hereby granted, as applicable, to the extent of

11

any Diminution in Value of their interests in the Prepetition Collateral from and after the Petition Date, the following:

(a)    Adequate Protection Liens.  As adequate protection of the interests of the Prepetition Secured Creditors in the Prepetition Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to grant, and immediately upon the entry of the Interim Order were deemed to have granted, to the Prepetition Trustee, for the benefit of itself and the Prepetition Secured Noteholders, additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (the "**Adequate Protection Liens**") all of each Debtor's presently owned or hereafter acquired property and assets (including any of the Debtors' claims or causes of action under sections 544, 545, 547, 548 or 550 of the Bankruptcy Code or any other similar state or federal law, and any proceeds thereof), other than OXAYDO® Excluded Assets (as defined in the Secured Notes Indenture), whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, chattel paper, contracts, owned real estate, real and personal property leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and stock of subsidiaries of the Debtors, and the proceeds and products of the foregoing (collectively, together with the Prepetition Collateral and the Cash Collateral, the "**Collateral**").  The Adequate Protection Liens shall be subject and subordinate only to (i) the Carve Out and, (ii) with respect to the restricted certificate

12

of deposit account at Wells Fargo Bank, N.A. (ending in x1527) (the "**Credit Card Collateral Account**"), the lien (the "**Wells Fargo Credit Card Account Lien**") granted to Wells Fargo Bank, N.A. pursuant to the interim and final orders approving the Debtors' continued use of their existing bank accounts and cash management system (the "**Cash Management Orders**"), and shall secure the Prepetition Secured Obligations to the extent of any Diminution in Value of the Prepetition Secured Creditors' interests in the Prepetition Collateral from and after the Petition Date. The Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "**Successor Cases**"). Except as expressly provided herein (including with respect to the Carve Out and the Wells Fargo Credit Card Account Lien), the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of these Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of these Chapter 11 Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment, or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases. For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtors, or the filing of, as applicable, mortgages,

13

security agreements, pledge agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements and without the necessity of taking possession or control of any Collateral. Except as otherwise expressly provided herein (including with respect to the Carve Out and the Wells Fargo Credit Card Account Lien), under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising.

(b)    Adequate Protection Superpriority Claim.    To the extent of any Diminution in Value of the interests of the Prepetition Secured Creditors in the Prepetition Collateral, the Prepetition Trustee, on behalf of itself and the Prepetition Secured Noteholders, shall be granted, subject only to the payment of the Carve Out, an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), which 507(b) Claim shall be an allowed claim against each of the Debtors (jointly and severally), with priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The 507(b) Claim shall be payable from all prepetition and postpetition property of the Debtors (including, for the avoidance of doubt, the OXAYDO® Excluded Assets) and the proceeds thereof, subject to the relative priorities set forth above.

(c)    <u>Fees and Expenses</u>.  The Debtors are authorized and directed to pay, within ten (10) calendar days of delivery of an invoice (which shall include reasonable supporting detail, which may be redacted to protect privileged or confidential information), all reasonable and documented prepetition and postpetition fees and expenses of:  (i) one primary counsel and one local counsel retained by the Prepetition Trustee; and (ii) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Ad Hoc Secured Noteholder Committee (as defined in the Restructuring Support Agreement) and one local counsel retained by the Ad Hoc Secured Noteholder Committee.  Payment of all such fees and expenses shall not be subject to allowance by the Court; <u>provided, however,</u> that the Debtors shall promptly provide copies of invoices received on account of the fees and expenses set forth above to the U.S. Trustee and counsel to any Committee appointed in the Chapter 11 Cases, and the Court shall have exclusive jurisdiction over any objections raised by the Committee (if appointed) or the U.S. Trustee to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) calendar days after delivery of an invoice(s) therefor and shall be limited to the issue of the reasonableness of such fees and expenses.  In the event that within ten (10) calendar days from delivery of such invoices the U.S. Trustee or counsel to the Committee (if appointed) raises an objection to a particular invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute; <u>provided,</u> that payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court.

(d)    <u>Adequate Protection Payments</u>.  The Debtors shall continue to pay to the Prepetition Trustee, for the benefit of itself and the Prepetition Secured Noteholders, monthly

adequate protection payments (the "**Adequate Protection Payments**"), in an amount resulting from applying a per annum rate equal to the non-default contract interest rate set forth in the Secured Notes Indenture to the aggregate outstanding amount of Prepetition Secured Obligations as of the Petition Date in respect of such relevant periods ending after the Petition Date; provided, however, that the Prepetition Trustee reserves the right to assert claims for the payment of additional interest calculated at any other applicable rate of interest, or on any other basis, provided for under the Prepetition Notes Documents, and for the payment of any other amounts provided for in the Prepetition Notes Documents. The Adequate Protection Payments will be calculated on a monthly basis, and are due and payable on the first business day of each month beginning in the first full month after entry of the Interim Order. The Prepetition Trustee is authorized and directed to distribute each Adequate Protection Payment to the Prepetition Secured Noteholders of record as of the date that is three (3) business days following the date on which the Prepetition Trustee receives any such Adequate Protection Payment.

(e)     Budget and Variance Reporting.     Attached as Exhibit A hereto and incorporated herein by reference is a 13-week cash flow forecast (the "**Budget**"), including the anticipated uses of the Cash Collateral for such period. Every four (4) weeks following entry of the Interim Order, on the last business day of such week, the Debtors will continue to provide the Prepetition Trustee and counsel to the Ad Hoc Secured Noteholder Committee with an updated Budget for the subsequent 13-week period. The initial Budget and each subsequent Budget shall be in form and substance acceptable to the Required Supporting Secured Noteholders (as defined in the Restructuring Support Agreement) and each such subsequent Budget shall not be deemed to constitute the "Budget" for purposes of this Final Order until such consent has been confirmed in writing by counsel to the Required Supporting Secured Noteholders. Each week following

entry of the Interim Order, on the third business day of such week, the Debtors shall also continue to provide to the Prepetition Trustee and counsel to the Ad Hoc Secured Noteholder Committee a Budget variance report/reconciliation (the "**Budget Variance Report**") setting forth in reasonable detail actual cash receipts and disbursements for the prior week, and, beginning after the first four (4) week period, all variances, on an individual line item basis and an aggregate basis, as compared to the previously delivered Budget on a cumulative weekly basis over a rolling four (4) week period, together with a statement certifying compliance with the Budget Covenants set forth below. The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance. The Debtors shall ensure that at no time any of the following occur (together, the "**Budget Covenants**"): (i) a negative variance of 15.0% or more from the total cash receipts set forth in the Budget, to be tested on a cumulative basis over a rolling four (4) week period, provided that, in the event that any cash receipt budgeted to be received in any rolling four (4) week period is not actually received during such period, such receipt shall be deemed, for purposes of any and all variance testing conducted pursuant to this Paragraph, to have been received during such budgeted period (and not, for the avoidance of doubt, during the week such cash receipt was actually received) if it is received (a) within one (1) calendar week after the end of such period, or (b) solely with respect to receipts in connection with the SPRIX® (ketorolac tromethamine) Nasal Spray, within one (1) calendar week before the beginning of such period; and (ii) a negative variance of 15.0% or more from the "Total Operating Disbursements," tested every week on a cumulative rolling four (4) week basis, provided that, in any rolling four (4) week period that "Total Operating Disbursements" are less than the budgeted amount for such period, the amount by which "Total Operating Disbursements" are less may be carried forward and added to the subsequent period, provided

further that, "Total Operating Disbursements" shall include disbursements made by the Debtors (including, but not limited to, any payments, expenditures or advances) other than (a) Adequate Protection Payments and (b) professional fees and expenses related to administration of these Chapter 11 Cases.

(f)     Access to Records.    Upon three (3) business days' written notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Prepetition Trustee and the Ad Hoc Secured Noteholder Committee to have reasonable access to (i) inspect the Debtors' properties, (ii) examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' senior management and financial advisors, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and financial advisors (during normal business hours), and the Prepetition Trustee and the Ad Hoc Secured Noteholder Committee shall be provided with reasonable access to the information they shall reasonably request.

(g)     Right to Seek Additional Adequate Protection.    This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Creditors to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

5.     Modification of Automatic Stay.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and the 507(b) Claim; (b) permit the Debtors to perform such acts as the Prepetition Trustee or Prepetition Secured Noteholders may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors

18

to incur all liabilities and obligations to the Prepetition Trustee and Prepetition Secured Noteholders under this Final Order; and (d) authorize the Debtors to pay, and the Prepetition Trustee and Prepetition Secured Noteholders to retain and apply, payments made in accordance with the terms of this Final Order.

6.    Grant and Perfection of Adequate Protection Liens. The Interim Order and this Final Order shall each be sufficient and conclusive evidence of the granting, attachment, validity, perfection, enforceability, and priority of the Adequate Protection Liens without the necessity of obtaining, filing, executing, or recording any financing statement, security agreement, vehicle lien application, patent filing, trademark filing, copyright filing, fixture filing, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of possession of, or control over, assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement and any other action required to obtain "control" pursuant to section 9-104, 9-105, 9-106, and/or 9-107 of the Uniform Commercial Code) to grant, attach, validate or perfect (in accordance with applicable nonbankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Trustee and Prepetition Secured Noteholders to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Trustee is authorized, but not required, to file, as it deems necessary or advisable in its sole discretion, such financing statements, security agreements, vehicle lien applications, patent filings, trademark filings, copyright filings, fixture filing, mortgages, notices of liens, and other instruments or similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and all such financing statements, security agreements, vehicle lien applications, patent filings, trademark filings, copyright filings, fixture filings, mortgages,

notices of lien, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence, or perfect the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the Prepetition Trustee all such financing statements, security agreements, vehicle lien applications, mortgages, notices, instruments, and other documents as the Prepetition Trustee may reasonably request. The Prepetition Trustee may file a copy of the Interim Order or this Final Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, mortgages, notices of lien, instrument, or similar document. In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized to do and perform all acts to make, execute, and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtors' performance hereunder. Nothing in this paragraph 6 shall prejudice the rights of the parties-in-interest to the extent set forth in paragraph 11.

7.    Credit Bid. The Prepetition Trustee, for the benefit of the Prepetition Secured Noteholders, shall have the right to credit bid all or any portion of their respective claims in connection with a sale of the Debtors' assets, without the need for further order of the Court, and whether such sale is effectuated under section 363(k) of the Bankruptcy Code, under a chapter 11 plan of reorganization for any or all of the Debtors, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; provided, however, that the foregoing shall not limit the rights of the Debtors under Section 363(k) of the Bankruptcy Code solely to the extent arising from acts or omissions by the Prepetition Secured Noteholders or the Prepetition Trustee occurring after the Petition Date.

20

8.    <u>Events of Default</u>.  The occurrence and continuance of any of the following events, unless waived in writing by the Prepetition Trustee and the Required Supporting Secured Noteholders, shall constitute an event of default (collectively, the "**Events of Default**"):

(a)    the Debtors shall have (i) filed a motion seeking to create, or (ii) created, incurred or suffered to exist, any postpetition liens or security interests, other than those granted or permitted pursuant to the Interim Order or this Final Order without the consent of the Required Supporting Noteholders;

(b)    the Debtors shall have filed a disclosure statement or chapter 11 plan that is not reasonably acceptable to the Prepetition Trustee and the Required Supporting Secured Noteholders;

(c)    any of the documents or other information required to be delivered to any of the Prepetition Secured Creditors pursuant to the Interim Order or this Final Order shall contain material misrepresentations;

(d)    the entry of a final order by the Court, other than the Interim Order or this Final Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority;

(e)    the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Collateral;

(f)    the Debtors shall support, commence, or join as an adverse party in any suit or other proceeding against the Prepetition Trustee or the Prepetition Secured Noteholders

relating to the Prepetition Secured Obligations or Collateral, including any proceeding seeking to avoid or require repayment of any Adequate Protection Payments;

(g)     reversal, amendment, supplement, vacatur, or modification (without the express prior written consent of the Prepetition Trustee and the Required Supporting Secured Noteholders) of the Interim Order or this Final Order;

(h)     the entry of a final order by the Court avoiding or requiring repayment of any portion of the Adequate Protection Payments made by the Debtors hereunder;

(i)     the Interim Order, this Final Order or any other pleading filed in the Chapter 11 Cases by the Debtors provides for the nonconsensual priming of the Prepetition Liens;

(j)     the Debtors shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the 507(b) Claim;

(k)     dismissal of any of these Chapter 11 Cases or conversion of any of these Chapter 11 Cases to chapter 7 cases, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in any of these Chapter 11 Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));

(l)     the cessation of all or any material part of the Debtors' business operations, considered on a consolidated basis without the consent of the Required Supporting Noteholders;

(m)     the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization is terminated or terminates;

(n)    termination of the Restructuring Support Agreement other than a termination by the Debtors pursuant to Section 7(b)(i) of the Restructuring Support Agreement;

(o)    the failure to make Adequate Protection Payments or other material payments as set forth herein when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors of written notice thereof from the Prepetition Trustee; and

(p)    the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, or obligations under the Interim Order or this Final Order, including a breach of the Budget Covenants set forth in Paragraph 4(e) hereof.

9.    <u>Rights and Remedies Upon Event of Default</u>. Upon the occurrence of an Event of Default and following the giving of five (5) business days' written notice to the Debtors, the Office of the U.S. Trustee, and counsel to any official committee appointed in these cases (the "**Remedies Notice Period**"), the Prepetition Trustee and the Prepetition Secured Noteholders may exercise the remedies available to them under the Interim Order, this Final Order, and applicable non-bankruptcy law, including, but not limited to, revoking the Debtors' right to use Cash Collateral and collecting and applying any proceeds of the Collateral in accordance with the terms of this Final Order and the Prepetition Notes Documents. During the Remedies Notice Period, the Debtors and/or a Committee (if appointed) shall be entitled to seek an emergency hearing; <u>provided</u> that the sole issue that the Debtors may bring before the Court at any such emergency hearing is whether an Event of Default has occurred and/or is continuing, and the Debtors shall not be entitled to seek other relief, including under section 105 of the Bankruptcy Code, at that hearing. During the Remedies Notice Period, the Debtors may request that this Court order the continued use of Cash Collateral. During the Remedies Notice Period, the

Debtors may continue to use Cash Collateral in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business. Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtors shall automatically, without further notice or order of the Court, no longer have the right to use or seek to use Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Remedies Notice Period, without further notice or order of the Court, and the Prepetition Trustee and the Prepetition Secured Noteholders shall be permitted to exercise all rights and remedies set forth in the Interim Order, this Final Order, the Prepetition Notes Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder. The delay or failure to exercise rights and remedies under the Interim Order, this Final Order or the Prepetition Notes Documents shall not constitute a waiver of the Prepetition Trustee's or the Prepetition Secured Noteholders' rights thereunder or otherwise.

      10.    <u>Carve Out</u>. As used in this Final Order, the "**Carve Out**" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up

to $25,000 in the aggregate incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed by final order (and, in the case of Committee Professionals (as defined below), subject to the Budget), all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and (subject to the Budget) any Committee appointed in the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before delivery by the Prepetition Trustee of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $350,000, and Allowed Professional Fees of Committee Professionals (to the extent a Committee is appointed) in an aggregate amount not to exceed $25,000, in each case incurred after delivery by the Prepetition Trustee of the Carve Out Trigger Notice, to the extent allowed by final order (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"). For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Trustee to primary restructuring counsel to the Debtors, the U.S. Trustee, and counsel to the Committee (if appointed), which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary in this Final Order, payment following the delivery of a Carve Out Trigger Notice of any of the statutory, Allowed Professional Fees or other fees covered by this Carve Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered assets or cash that is not Cash Collateral (if any)

and second, if there are no remaining unencumbered assets or cash that is not Cash Collateral, from Cash Collateral.

11.    Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims. The stipulations, releases and admissions contained in this Final Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors and their affiliates in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date. The stipulations, releases and admissions contained in this Final Order (other than the acknowledgement in paragraph F, which is binding only upon the Debtors), including, without limitation, the Debtors' Stipulations, shall be binding upon all other parties-in-interest, including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for a Debtor or the Committee (if appointed) and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party-in-interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has filed an adversary proceeding or contested matter (i) before the earlier of (a) the date on which this Court enters an order confirming the Debtors' chapter 11 plan of reorganization and (b) seventy-five (75) calendar days after entry of the Interim Order, subject to further extension by written agreement of the Debtors and the Required Supporting Secured Noteholders, each acting in their sole discretion (in each case, a "**Challenge Period**" and the date of expiration of each Challenge Period being a "**Challenge Period Termination Date**"), (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding: (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Trustee or any Prepetition Secured Noteholder; or (b) the validity, enforceability, allowability, priority, secured status, or amount of

26

the Prepetition Secured Obligations (any such claim, a "**Challenge**"), and (iii) there is a final order entered in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter. Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled): (a) any and all such Challenges by any party (including, without limitation, the Committee (if appointed), any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (b) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Chapter 11 Cases and any Successor Cases; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Final Order, including, without limitation, the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Trustee's and Prepetition Secured Noteholders' claims, liens, and interests contained in this Final Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, and all creditors, interest holders, and other parties-in-interest in these Chapter 11 Cases and any Successor Cases.  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in this Final Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were

27

expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee appointed in these Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Secured Notes or the Prepetition Secured Obligations, and an order of the Court conferring such standing on a Committee (if appointed) or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by the Committee (if appointed) or such other party-in-interest.

12.    <u>Limitations on the Use of Cash Collateral</u>.  Notwithstanding anything herein to the contrary, the Debtors shall not assert or prosecute, and no portion of the proceeds of the Collateral, including any Cash Collateral or the Carve Out, and no disbursements set forth in the Budget, shall be used in connection with (a) preventing, hindering, or delaying the Prepetition Trustee's or the Prepetition Secured Noteholders' enforcement or realization upon any of the Collateral once an Event of Default has occurred and after the Remedies Notice Period, (b) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Secured Obligations or Collateral, or any other rights or interest of the Prepetition Secured Creditors, (c) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Trustee or any Prepetition Secured Noteholder or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or (d) paying any amount on account of any claims arising prior to the Petition Date or any non-ordinary course administrative claim unless such payments are (i) approved by an order of this Court and (ii) in accordance with the

Budget Covenants; provided, however, that up to $25,000 of Cash Collateral may be used to pay the allowed fees and expenses incurred solely by the Committee (if appointed) in investigating (but not commencing or prosecuting), the validity, enforceability, perfection, priority, or extent of the liens under the Prepetition Secured Notes (the "**Committee Investigation Budget**").

13.     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

14.     Section 506(c) Claim.  No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time, or any future proceeding that may result therefrom, including any Successor Cases, shall be charged against or recovered from the Prepetition Trustee or any Prepetition Secured Noteholder or any of their respective claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Prepetition Trustee or the Required Supporting Secured Noteholders, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives, agents, or lenders.  The Debtors and their estates are deemed to have irrevocably waived, and are prohibited from asserting, any surcharge claim, under section 506(c) or otherwise, for any costs incurred, including those in connection with the preservation, protection, or enhancement of, or realization by the Prepetition Secured Creditors upon, the Collateral.

15.     No Waiver of Prepetition Secured Creditors' Rights; Reservation of Rights. Notwithstanding anything to the contrary herein, this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any Prepetition Secured Creditors' rights with respect to any person or entity or with respect to any other collateral owned or held by any

person or entity. The rights of the Prepetition Secured Creditors are expressly reserved and entry of this Final Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of: (a) the Prepetition Secured Creditors' rights under any of the Prepetition Notes Documents; (b) the Prepetition Secured Creditors' rights to seek any other or supplemental relief in respect of the Debtors; (c) the Prepetition Secured Creditors' rights to seek modification of the grant of adequate protection provided under this Final Order so as to provide different or additional adequate protection at any time; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Creditors.

16.    No Liability to Third Parties.  By reason of permitting the Debtors to use Cash Collateral under the terms set forth herein or in taking any other actions related to the Interim Order or this Final Order, the Prepetition Trustee and Prepetition Secured Noteholders (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to any of the Debtors, their creditors, or their estates, and shall not be party to or be deemed to be party to a joint venture or partnership with any of the Debtors.  Furthermore, nothing in the Interim Order or this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Trustee or the Prepetition Secured Noteholders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

17.     No Marshaling/Applications of Proceeds.  The Prepetition Trustee and Prepetition Secured Noteholders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral (including the Prepetition Collateral), as the case may be, and proceeds or payments shall be received and applied in accordance with the Prepetition Notes Documents, notwithstanding any other agreement or provision to the contrary.

18.     Section 552(b).  The Prepetition Trustee and Prepetition Secured Noteholders are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code does not apply to the Prepetition Trustee or Prepetition Secured Noteholders with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

19.     Proofs of Claim.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Trustee and Prepetition Secured Noteholders will not be required to file proofs of claim in any of these Chapter 11 Cases or Successor Cases for any claim described herein, and the Debtors' Stipulations in Paragraph E herein shall be deemed to constitute a timely filed proof of claim for the Prepetition Trustee and Prepetition Secured Noteholders. Notwithstanding the foregoing, the Prepetition Trustee, for the benefit of itself and the Prepetition Secured Noteholders, and each of the Prepetition Secured Noteholders, for its own benefit, are authorized, but not directed or required, in their sole discretion, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim described herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Convertible Notes Trustee and holders of

31

Convertible Notes (the "**Convertible Noteholders**") will not be required to file proofs of claim in any of these Chapter 11 Cases or Successor Cases for any claim described herein, and the Debtors' Stipulations in Paragraph F herein shall be deemed to constitute a timely filed proof of claim for the Convertible Notes Trustee and Convertible Noteholders. Notwithstanding the foregoing, the Convertible Notes Trustee, for the benefit of itself and the Convertible Noteholders, and each of the Convertible Noteholders, for its own benefit, are authorized, but not directed or required, in their sole discretion, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim described herein.

20. <u>Binding Effect of Final Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Trustee, the Prepetition Secured Noteholders, all other creditors of any of the Debtors, any Committee or any other Court-appointed committee appointed in any Chapter 11 Cases, and all other parties-in-interest and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estates of the Debtors or with respect to the property of the estate of any Debtors in any of these Chapter 11 Cases, any Successor Cases, or upon dismissal of any Case or Successor Case. In the event of any inconsistency between the provisions of this Final Order and the Prepetition Notes Documents or any other order (including any "First Day" order), the provisions of this Final Order shall govern and control. Any payments to be made by any of the Debtors under any order (including any "First Day" order) shall be made in accordance with this Final Order.

21.    <u>Survival</u>.

(a)    The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of these Chapter 11 Cases; (b) converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing any of these Chapter 11 Cases or any Successor Cases.  The terms and provisions of this Final Order, including, without limitation, the granting of the Adequate Protection Liens and 507(b) Claim, and the other protections granted to the Prepetition Trustee and Prepetition Secured Noteholders pursuant to this Final Order, shall continue in full force and effect notwithstanding entry of any such order.

(b)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity and enforceability of the Adequate Protection Obligations granted in connection therewith, subject to paragraph 11 hereof.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or Adequate Protection Obligations incurred by the Debtors to the applicable Prepetition Secured Creditors prior to the actual receipt of written notice by the Required Supporting Secured Noteholders of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Final Order.

(c)    Except as expressly provided in this Final Order, the Adequate Protection Obligations and all other rights and remedies of the Prepetition Trustee and the Prepetition Secured Noteholders granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of these Chapter 11 Cases to a case under chapter 7, dismissing these Chapter 11 Cases, approving the sale of any

Collateral (including any Prepetition Collateral) pursuant to section 363(b) of the Bankruptcy Code or the entry of an order confirming a plan of reorganization in these Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Final Order shall continue in these Chapter 11 Cases, in any Successor Cases, or in any superseding chapter 7 case under the Bankruptcy Code, and the Adequate Protection Obligations and all other rights and remedies of the Prepetition Trustee and the Prepetition Secured Noteholders granted by the provisions of this Final Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash.

22.     Effect of this Final Order. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

23.     Retention of Jurisdiction. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

Wilmington, Delaware
Dated: Dec 4    , 2018

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

34